IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Case No. 5:24-CV-00179-M

| | | |
|---|---|---|
| CARMIN NOWLIN,<br>TAMIKA HALEY, and<br>JESUS RODRIGUEZ, on behalf of<br>themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | ORDER |

This matter comes before the court on Defendant's Motion to Compel Arbitration and Dismiss Plaintiffs' First Amended Complaint [DE 24]. Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge Robert B. Jones, Jr. issued an Order and Memorandum and Recommendation ("OMR"), granting the motion to compel and recommending that this court grant the motion to dismiss. DE 37. Plaintiffs filed timely objections to the OMR, and Defendant filed a written response to the objections. DE 39, 43. For the reasons that follow, the court finds one portion of the order contrary to law and reverses that portion but, otherwise, affirms the order to compel to arbitration certain Plaintiffs' claims, adopts the recommendation, and dismisses certain Plaintiffs' claims.

## I. Background

All parties agree that the sole question currently before this court is whether the Military Lending Act ("MLA") bars the arbitration of Plaintiffs' claims against Defendant. No party objects to Judge Jones' recitation of the procedural background of this case, and the court recounts

it here. Plaintiffs, who are current or former members of the United States military and Wells Fargo credit card holders, brought this putative class action alleging generally that Wells Fargo "charg[ed] interest rates and fees that were too high, allowing unlawful charges to improperly inflate servicemembers' principal balances, and charg[ed] compound interest on these inflated balances" (Am. Compl. ¶ 3) and misrepresented its practices in violation of the MLA, Servicemembers Civil Relief Act ("SCRA"), the Truth in Lending Act ("TILA"), and the Credit CARD Act of 2009 ("CARD Act"), and in violation of state law giving rise to claims for breach of contract, breach of implied covenant of good faith and fair dealing, unfair and deceptive trade practices, negligence, negligent misrepresentation, and breach of fiduciary duty or special trust. *See generally* Compl., DE 1.

The original complaint was filed on March 20, 2024, but the case was stayed three months later pending an interlocutory appeal from the court's order denying a motion to compel arbitration in *Espin v. Citibank, N.A.*, No. 5:22-cv-383-BO,[1] a case that raised materially identical facts and legal issues. 2023 WL 6449909 (E.D.N.C. Sept. 29, 2023). On January 27, 2025, the Fourth Circuit ruled that the arbitration agreements were enforceable as to the SCRA claims and remanded the case with instructions to "compel arbitration in accordance with the terms of the parties' arbitration agreements, not only with respect to plaintiffs' SCRA claims but also with respect to all other claims except those brought under the MLA." *Espin v. Citibank, N.A.*, 126 F.4th 1010, 1019 (4th Cir. 2025). The court explained that the MLA claims were excepted because the statute "does indeed manifest a congressional intent to override arbitration," and the other claims were included because "the plaintiffs' only ground for avoiding arbitration of them was based on the

[1] The case was subsequently reassigned from Judge Boyle to the undersigned on September 27, 2025.

SCRA." *Id.* (citing 10 U.S.C. § 987(f)(4)). However, because the district court did not reach the parties' arguments regarding the applicability of the MLA, the Fourth Circuit instructed the district court to make that determination on remand and to address any other issues on the MLA claims that the parties might raise. *Id.* at 1020. The court denied the *Espin* plaintiffs' petition for rehearing, and the mandate issued on March 5, 2025. *Espin*, No. 5:22-cv-383-M, DE 72 (E.D.N.C. Mar. 5, 2025).

Thereafter, the parties filed a status report in this case indicating Plaintiffs' intent to file an amended complaint, and Plaintiffs did so on April 21, 2025. DE 23. Wells Fargo responded by filing the instant motions to compel arbitration and to dismiss the amended complaint.

This court referred the motions to Judge Jones for disposition and/or recommendation, as appropriate. Text Ord., Feb. 6, 2026. Judge Jones granted the motion to compel, finding the MLA and its arbitration bar do not apply to Plaintiffs' Wells Fargo credit card accounts, because the accounts were opened prior to credit cards being covered by the MLA, and the regulations expressly state that the statute does not apply retroactively to such accounts. DE 37 at 5-11. Judge Jones also rejected the Plaintiffs' alternative arguments that the MLA Notice in the governing agreement itself exempts their claims from arbitration and that the MLA prohibits enforcing the arbitration clause specifically against Plaintiff Rodriguez, because he was on active duty when this case was filed. *Id.* at 11-13. Finally, Judge Jones recommends that this court grant the motion to dismiss, stating that "all claims presented are arbitrable, and Plaintiffs have not requested a stay of the court proceeding pending arbitration." *Id.* at 13.

## II. Legal Standards

This court is asked to review Judge Jones's OMR, which constitutes an order granting Defendant's motion to compel arbitration pursuant to § 636(b)(1)(A), and a recommendation to

grant Defendant's motion to dismiss the operative pleading pursuant to § 636(b)(1)(B).

With the exception of dispositive matters, district courts may designate magistrate judges to hear and determine any pretrial matter pending before the district court. 28 U.S.C. § 636(b)(1)(A). The district judge may reconsider any order authorized under § 636(b)(1)(A) "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." *Id.*; *see also* Fed. R. Civ. P. 72(a); *Springs v. Ally Fin. Inc.*, 657 F. App'x 148, 152 (4th Cir. 2016). "Clearly erroneous and contrary to law are not synonymous; a reviewing court assesses the *factual* portions of a Magistrate Judge's order under the clearly erroneous standard, but reviews *legal* conclusions to determine if they are contrary to law." *Kiser v. Truist Fin. Corp.*, 827 F. Supp. 3d 718, 724 (E.D. Va. 2026) (citation omitted) (emphasis added); *see also McCormick & Co. v. Ryder Integrated Logistics, Inc.*, 660 F. Supp. 3d 430, 433 (D. Md. 2023) ("The 'clearly erroneous' standard applies to factual findings, while legal conclusions will be rejected if they are 'contrary to law.'") (citation omitted).

"A [factual] finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Wall v. Rasnick*, 42 F.4th 214, 220 (4th Cir. 2022) (citation omitted). Furthermore, "the contrary to law standard is synonymous with de novo review as to questions of law." *Kiser*, 827 F. Supp. 3d at 724 (citation omitted); *see also Stonecrest Partners, LLC v. Bank of Hampton Roads*, 770 F. Supp. 2d 778, 782 (E.D.N.C. 2011) ("contrary to law" standard permits plenary review of legal conclusions).

For dispositive matters, magistrate judges may be designated to conduct hearings (if appropriate) and submit to the district court proposed findings and recommendations for the disposition of such matters. 28 U.S.C. § 636(b)(1)(B). A magistrate judge's recommendation

carries no presumptive weight. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The district court "may accept, reject, or modify, in whole or in part, the findings or recommendations . . . and may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b). The court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Absent a specific and timely objection, the court reviews only for "clear error" and need not give any explanation for adopting the recommendation. *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

## III. Objections

Plaintiffs cite Rule 72(b)(3) of the Federal Rules of Civil Procedure for the proposition that the court must review all objections de novo. DE 39 at 2. Again, while Rule 72(b) governs a magistrate judge's treatment of "dispositive motions and prisoner petitions," Rule 72(a) governs a magistrate judge's treatment of nondispositive matters. Under these rules, therefore, the court will determine de novo any part of Judge Jones' recommendation or any legal conclusion, and review for clear error any factual finding, to which Plaintiffs lodge a proper objection.

Plaintiffs contend that the OMR "(1) improperly disregards Supreme Court authority; (2) ignores the plain language of the regulation it purports to apply; (3) wrongly cherry-picks regulatory history to side against servicemembers; and (4) ignores how credit cards function." DE 39 at 2. By their citations to specific portions of the OMR, Plaintiffs' objections are clearly aimed only at Judge Jones' order granting the motion to compel, and the court will address the objections to the extent that they argue the order "is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). Notably, Plaintiffs do not object to Judge Jones' recommendation for dismissal of the

amended complaint; accordingly, the court will also review the recommendation for clear error. *See Diamond*, 416 F.3d at 315 ("in the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'") (citation omitted).

**IV. Analysis**

No party disputes that the credit card agreements between Plaintiffs and Defendant contain an arbitration agreement, which would typically govern the disputes in this case. In the present motion, Defendant argues that the agreements originated before the effective date of the MLA and, as the agreements thus are not subject to the MLA's "bar," moves to compel arbitration of the Plaintiffs' claims. Plaintiffs counter that Defendant relies on irrelevant or improper regulations and case law to interpret the MLA.

A. Order

Plaintiffs do not object to Judge Jones' recitation of the legal standards governing arbitration agreements nor to his description of relevant portions of the MLA (DE 37 at 3-5); the court finds no clear error in Judge Jones' reliance on these standards. However, the court sustains Plaintiffs' objection concerning the MLA's provision governing arbitration and finds that the plain language of the provision resolves the issue raised in this matter.

Plaintiffs contend, specifically for Plaintiff Rodriguez's claims, that the following MLA provision overrides any agreement to arbitrate:

> Notwithstanding section 2 of title 9 [*i.e.*, the FAA], or any other Federal or State law, rule, or regulation, no agreement to arbitrate any dispute involving the extension of consumer credit shall be enforceable against any covered member or dependent of such a member, or any person who was a covered member or dependent of that member when the agreement was made.

*Espin*, 126 F.4th at 1019 (quoting 10 U.S.C. § 987(f)(4)).

Judge Jones found that because § 987(f)(4) applies only to disputes involving "the extension of consumer credit," and that such extension occurs at the inception of a credit card account, which, for all Plaintiffs including Rodriguez, occurred before the MLA's effective date, "the MLA's arbitration bar does not apply *regardless of Plaintiff's active duty status* when the case was filed." DE 37 at 12-13 (emphasis added). Plaintiffs object, arguing that (1) "10 U.S.C. § 987(f)(4) uses the term 'covered member' which is defined by statute—not regulation—to simply mean an active duty servicemember, such as Plaintiff Rodriguez"; (2) section 987(f)(4) provides that "no agreement to arbitrate any dispute involving the extension of consumer credit shall be enforceable against any covered member"; and, (3) Judge Jones' decision would erroneously force Rodriguez into arbitration despite Rodriguez's status. DE 39 at 11. Plaintiffs contend that "[t]he M&R reached this result by relying on its erroneous reading of the MLA regulations," but the term "covered member" is defined by statute, not the regulations. *Id.* The court agrees; under the plain language of the statute, the court finds that an order compelling Rodriguez (or any Plaintiff or putative class member who is unquestionably a "covered member" under the MLA) to arbitration of a dispute concerning the extension of credit violates the MLA.

According to the Fourth Circuit, it is a cardinal rule of statutory construction that, when interpreting the meaning of a statute, courts begin with the text of the statute itself and must "assume that the legislative purpose is expressed by the ordinary meaning of the words used." *Air Line Pilots Ass'n, Int'l v. U.S. Airways Grp., Inc.*, 609 F.3d 338, 341 (4th Cir. 2010) (quoting *Am. Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982)). "It is well established that when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *DIRECTV Inc. v. Nicholas*, 403 F.3d 223, 225 (4th Cir. 2005) (quoting *Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004)).

The Fourth Circuit instructs that, in interpreting the plain language of a statute, courts must "give the words of a statute their ordinary, contemporary, common meaning, absent an indication Congress intended them to bear some different import." *Id.* (quoting *Williams v. Taylor*, 529 U.S. 420, 431 (2000)); *see also Air Line Pilots Ass'n*, 609 F.3d at 342 (quoting *FDIC v. Meyer*, 510 U.S. 471, 476 (1994)) (courts must construe statutory terms in accordance with their "ordinary or natural meaning[s]"). In addition, courts must "abide by 'the cardinal rule that statutory language must be read in context [because] a phrase gathers meaning from the words around it.'" *DIRECTV Inc.*, 403 F.3d at 225 (quoting *Gen. Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581, 596 (2004)); *see also Lara-Aguilar v. Sessions*, 889 F.3d 134, 143 (4th Cir. 2018) (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)) ("A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.").

It is "[o]nly when statutory text is ambiguous" that courts should "consider other indicia of congressional intent such as the legislative history." *United States v. Chaudhri*, 134 F.4th 166, 177 (4th Cir.), *cert. denied*, 146 S. Ct. 208 (2025) (quoting *Snyder's-Lance, Inc. v. Frito-Lay N. Am., Inc.*, 991 F.3d 512, 516 (4th Cir. 2021)).

As mentioned above, the Fourth Circuit was recently asked in a related case to determine whether the SCRA "contains 'a clearly expressed congressional intention' to override the FAA's instruction to enforce arbitration agreements." *Espin*, 126 F.4th at 1016 (citing *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 510 (2018)). The *Espin* court noted, "[t]he Supreme Court has concluded that arbitration agreements are enforceable 'even when the claims at issue are federal statutory claims, unless the FAA's mandate has been 'overridden by a contrary congressional command.'" *Id.* (quoting *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012)). The court concluded that the applicable SCRA provision "does not prohibit the [aggrieved] person from resolving a SCRA

claim in another forum, such as the arbitral forum" (*id.* at 1017), remanded the case with instructions to compel all SCRA-related claims to arbitration, and excepted from the remand the plaintiffs' MLA claims, finding that the statute "does indeed manifest a congressional intent to override arbitration" (*id.* at 1019).

This court recognizes the strong presumption of arbitrability and the Supreme Court's admonition that "courts have a duty to interpret Congress's statutes as a harmonious whole rather than at war with one another." *Id.* at 1017 (cleaned up). Mindful of this and the applicable legal standards, the court finds that the MLA explicitly overrides the enforcement of arbitration agreements for those protected by its arbitration provision.

Section 987(f)(4) provides in relevant part that "[n]otwithstanding section 2 of title 9 [the FAA] or any other Federal or State law, rule, or regulation, no agreement to arbitrate any dispute involving the extension of consumer credit shall be enforceable against any covered member . . . or any person who was a covered member . . . when the agreement was made." 10 U.S.C. § 987(f)(4). First, the "notwithstanding . . ." clause makes clear that no other law or regulation matters to the application of this provision. *Cf. Steines v. Westgate Palace, L.L.C.*, 113 F.4th 1335, 1343 (11th Cir. 2024) ("The MLA entirely displaces the FAA."). The next clause "no agreement to arbitrate any dispute involving the extension of consumer credit" means, of course, that the arbitration agreement must concern a dispute over conduct governed by the MLA.[2] The final

[2] The court is cognizant of at least one court's finding that "any dispute" removes any limitation of the arbitration bar to only MLA claims. *See Vickery v. Empower Fin., Inc.*, No. 25-CV-03675-JSC, 2025 WL 2841686, at *8 (N.D. Cal. Oct. 7, 2025); *see also Moss v. Cleo AI Inc.*, 799 F. Supp. 3d 1152, 1161 (W.D. Wash. 2025) ("Moss's TILA claim is inextricably linked to the same set of facts as his MLA claim[; thus], it is also subject to th[e] MLA-created exception to the FAA's mandate favoring arbitration"). The court agrees and recognizes that the MLA is not the only statute governing the "extension of consumer credit."

clause provides that *no* such arbitration agreement "shall be enforceable against *any* covered member," whether a current active duty service or reserve member, or one who held such status at the inception of the credit card agreement.[3] In essence, the provision provides the benefit of choice—i.e., whether or not to arbitrate—to a select group of claimants who are subject to an otherwise enforceable arbitration agreement, but who can show they are "covered members" under the MLA.[4]

In this case, no party disputes that the subject arbitration provision is contained in the credit card agreements between Plaintiffs and the Defendant, and that the Plaintiffs' claims involve the extension of consumer credit. Thus, the only remaining question concerning Defendant's request to compel arbitration of Plaintiffs' MLA claims is whether any Plaintiff (or putative class member) is a "covered member" as defined by the MLA.

Under the MLA, a covered member "means a member of the armed forces who is (A) on active duty under a call or order that does not specify a period of 30 days or less; or (B) on active Guard or Reserve Duty." 10 U.S.C. § 987(i)(1). Thus, the relevant provision applies to render unenforceable any arbitration agreement for a card holder who is either (1) a current active service, guard, or reserve member; or (2) an active service, guard, or reserve member at the inception of a credit card agreement after the effective date of the MLA. Here, no party disputes that Rodriguez is a current active duty service member; therefore, under § 987(f)(4), he has the choice whether to

---

[3] The court finds that the language, "or any person who was a covered member . . . when the agreement was made," must, by operation of the MLA's non-retroactive effective date and for the reasons stated herein, apply to agreements originating after October 3, 2017. *See Lara-Aguilar v. Sessions*, 889 F.3d 134, 143 (4th Cir. 2018) (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)) ("[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.").

[4] Defendant's own agreement acknowledges as much by notifying cardholders: "The Arbitration Agreement does not apply to you if *you* are covered by the Military Lending Act." *See* DE 25-2 at 15; DE 25-3 at 16 (emphasis added).

arbitrate his consumer credit dispute(s) and, here, he clearly declines. Accordingly, the subject arbitration agreement cannot be enforced against Rodriguez. The court must conclude that an order granting Defendant's motion to compel Rodriguez's claims to arbitration is contrary to law.

Plaintiffs make no objection nor proffer any argument concerning whether Plaintiffs Nowlin and Haley are "covered members" eligible for § 987(f)(4)'s benefit. The record presented does not indicate that either Plaintiff is a current active duty service member or was on active duty at the inception of their credit agreements. Judge Jones found that they are not barred from arbitration by § 987(f)(4) and the court finds no clear error in this conclusion, albeit for different reasons.

Defendant argues that none of the Plaintiffs is covered under the MLA because the statute was not in effect at the time Plaintiffs entered their agreements with Defendant. Judge Jones agrees with Defendant, concluding that "Plaintiffs' accounts did not involve an 'extension of consumer credit' under the MLA because credit cards were not covered under the MLA at the time Plaintiffs first opened their accounts. Thus, the MLA's arbitration bar does not apply." DE 37 at 6.

The error here is in failing to recognize that the plain language of § 987(f)(4) contains terms inconsistent with this conclusion. As stated above, § 987(f)(4) provides an opportunity to challenge the enforceability of an arbitration agreement to a "covered member" ***or*** to "any person who was a covered member . . . when the agreement was made." Relevant here, the statute further defines "covered member" as one on active military, guard, or reserve duty. *See* 10 U.S.C. § 987(i)(1). Under Defendant's theory, which focuses on when the agreement was made, no person who entered an agreement before October 3, 2017, would be a "covered member" under § 987(f)(4). However, the arbitration provision, unlike the other provisions of § 987, specifies that "*no* agreement to arbitrate . . . shall be enforceable against *any* covered member," notwithstanding

the FAA "or any other Federal or State law, rule, or regulation." *Id.* § 987(f)(4) (emphasis added). Under this clear language, it is evident that Congress intended that current active duty members, such as Plaintiff Rodriguez, enjoy the benefit of choosing whether to forego an arbitration agreement in a dispute involving the extension of consumer credit, notwithstanding the date of the inception of the agreement.[5]

To the extent that Defendant might argue this construction results in prejudice or unfairness to credit issuers (*see* 37 at 8 (citing 79 Fed. Reg. at 58,616)), the court notes that Congress specifically delineated those persons who are to benefit from § 987(f)(4) to include not only all covered (active duty) members, but also those who were on active duty at the inception of the agreement. The provision's inclusive language aligns with the purpose of the MLA to "provide additional protections relating to [certain credit] transactions" to "Service members and their dependents." 32 C.F.R. § 232.1(b); *see also Davidson v. United Auto Credit Corp.*, 65 F.4th 124, 130 n.8 (4th Cir. 2023) (quoting *Henderson v. Shinseki*, 562 U.S. 428, 441 (2011)) ("provisions

---

[5] The Eleventh Circuit's opinion in *Steines*, *supra*, supports this court's interpretation of the MLA. In determining whether an active-duty borrower's claims could be compelled to arbitration, the court found that "[t]wo separate clauses of the MLA establish *Congress's clear intent to prohibit* lenders of consumer credit from *requiring servicemembers to arbitrate claims* therefrom." 113 F.4th at 1343 (emphasis added). The court cited, as here, § 987(f)(4), as well as § 987(e)(3), which makes it unlawful for any creditor to extend consumer credit to a servicemember where "the creditor requires the borrower to submit to arbitration." *Id.* at 1343-44. When analyzing § 987(f)(4), the Eleventh Circuit interpreted the statute as, "[i]f the MLA applies to a contract involving the extension of consumer credit, the district court cannot enforce any agreement in that contract to arbitrate any dispute." *Id.* at 1344. Just prior to its § 987(f)(4) interpretation, the *Steines* court asserts that "the Supreme Court has recognized, albeit in dicta, that the MLA overrode the FAA by making it 'unlawful' to require *a party subject to the MLA* to arbitrate." 113 F.4th at 1344 (emphasis added). Also, just after the interpretation, the court concludes that "the MLA over[rides] *all* disputes . . ." and "[b]ecause the FAA has been unmistakably overridden . . . the underlying arbitration agreement at issue in this case [is] unenforceable." *Id.* (emphasis added). This language, and the decision as a whole, demonstrates that the *Steines* court interpreted § 987(f)(4) to protect all "covered members" in their choice of forum, notwithstanding the date of the consumer credit agreement. *Steines*, while not binding, is certainly persuasive in its interpretation of the MLA and its arbitration provisions.

for benefits to members of the Armed Services are to be construed in the beneficiaries' favor"). The protection provided in § 987(f)(4) applies to a covered member's choice of forum, not his or her claims, and by its clear terms, the provision governs *any* dispute involving an extension of credit that is subject to an arbitration agreement.

Although not necessary to the analysis given the court's interpretation of the plain language of the statute,[6] the court notes that the Department of Defense ("DoD") regulation governing applicability of the MLA describes as an example of someone who is "covered" under the statute a person who "is ordered to serve on active duty," even *before* such person enters into an "open-end line of credit," at which time the person becomes a "covered borrower." 32 C.F.R. § 232.2(a)(2)(i); *see also Wood v. Omni Fin. of Nevada, Inc.*, No. 1:22-cv-1148-LMB, 2023 WL 3766524, at *3 (E.D. Va. May 31, 2023) (describing the difference between "covered members" and "covered borrowers" under the MLA).[7] This example appears to illustrate Congress' intent that, for the MLA's arbitration provision, card holders currently on active duty ("covered members"), as well as those on active duty when the credit agreement was made, notwithstanding the FAA or any other law, rule, or regulation, shall have the option to bring their disputes before

---

[6] The court has interpreted the plain language of the statute and, thus, it is unnecessary to consider the MLA's legislative history and/or the DOD's interpretation of the statute, if any. *See Van Alstyne v. Elec. Scriptorium, Ltd.*, 560 F.3d 199, 207 (4th Cir. 2009) ("[W]hen statutory language is plain and unambiguous," the court's examination of the statute ceases, and "there is no need for recourse to legislative history."). The court also notes that this matter does not involve a challenge to, or reliance on, a regulation or any agency action and, thus, the Supreme Court's instructions concerning statutory interpretation in *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024), do not apply.

[7] The DoD, in defining "covered borrowers" as covered members who "become[] obligated on a consumer credit transaction or establish[] an account for consumer credit," states that a covered borrower is *not* someone who, though covered at the time the agreement was made, is no longer a covered member. 32 C.F.R. § 232.3(g)(4). In contrast, § 987(f)(4), by its clear terms ("any person who was a covered member . . . when the agreement was made"), applies to such a person. In this respect, the court finds 32 C.F.R. § 232.9(d), which confines the benefits of § 987(f)(4) to "covered borrowers," inconsistent with § 232.3(g)(4) and the plain language of the statute.

an arbitrator or "any appropriate United States district court," subject, of course, to the MLA's statute of limitations. *See* 10 U.S.C. § 987(f)(5)(E). This interpretation "can most fairly be said to be imbedded in the statute, in the sense of being most harmonious with its scheme and the general purposes that Congress manifested." *Davidson*, 65 F.4th at 135 (Wilkinson, J. dissenting) (quoting *Comm'r v. Engle*, 464 U.S. 206, 217 (1984)).

In concluding that the MLA's arbitration provision does not apply to current active duty service members whose agreements arose prior to October 3, 2017, the OMR improperly fails to recognize the expanse of the coverage contained in the provision's clear terms. Again, the provision expressly removes from consideration the FAA and *any other* federal or state law, rule, or regulation. Applicable to this case, the provision further provides that *no* agreement to arbitrate *any* dispute concerning an extension of credit *shall be* enforceable against *any* covered member. Here, as a person currently on active duty, Rodriguez is a "covered member" under § 987(i)(1). As such, the arbitration contract with Defendant, to which he indisputably agreed, cannot be enforced against Rodriguez pursuant to § 987(f)(4).

As Nowlin and Haley are not "covered members" under the MLA, nor is there evidence or argument that they were covered members when their agreements with Defendant were made, the arbitration provision does not provide them the benefit of choosing to pursue their claims through litigation. Nowlin's and Haley's claims against Defendant shall be compelled to arbitration, as originally contracted.

In light of this order, the court need not address Plaintiffs' remaining objections to the OMR. Any discussion concerning the meaning of "extension" of consumer credit, while perhaps relevant to the analysis of alleged violations of the MLA's proscriptive provisions, is not pertinent to whether a covered service member can be compelled to arbitration under the MLA's clear

language in § 987(f)(4).

Finally, the court finds this order is not inconsistent with the Fourth Circuit's ruling in *Espin*. Citing § 987(f)(4), the *Espin* court recognizes that the MLA "does indeed manifest a congressional intent to override arbitration." 126 F.4th at 1019. While that court acknowledged the parties' disagreement "about the meaning of 'extending consumer credit'" in describing the dispute, the court also observed that the "district court never addressed the MLA question" and remanded the case "to enable the [district] court to determine whether the MLA applies to this case ...." *Id.* at 1020. Unlike here, the *Espin* court did not find that the MLA's arbitration provision prohibits enforcement of arbitration agreements against covered service members for consumer credit disputes, but in that case, the court made no finding as to whether the plaintiffs were covered members under the MLA. *See id.*

In sum, the court finds, for reasons different than those expressed by Judge Jones, nothing contrary to law in the order to grant Defendant's motion to compel the claims by Nowlin and Haley against Defendant to arbitration, but respectfully finds the order contrary to law as to claims raised by Rodriguez.

B. Recommendation

Based on his order compelling arbitration of this matter, Judge Jones recommends that the court dismiss the action and close the case, particularly here where there has been no request for a stay. DE 37 at 13 (citing *Mod. Perfection, LLC v. Bank of Am., N.A.*, 126 F.4th 235, 244 (4th Cir. 2025)). No party objects to this recommendation. Upon careful review of the OMR, the applicable law, and the record presented, and finding no clear error with respect to claims brought by Nowlin and Haley, the court adopts the recommendation. However, in light of this order finding Rodriguez to be a "covered member" under the MLA, the court respectfully declines to adopt the

recommendation to dismiss Rodriguez's claims.

## V. Conclusion

"[W]hen, as here, Congress perceives stark inequalities in the bargaining parties, it is constitutionally entitled to supply a corrective. Congress did so in the Military Lending Act …." *Davidson*, 65 F.4th at 141 (4th Cir. 2023) (Wilkinson, J. dissenting). For the reasons stated herein, the court finds that, with respect to Plaintiffs Nowlin and Haley, Judge Jones' order to compel arbitration and recommendation to dismiss, rather than stay, the action are not contrary to law. However, the conclusion that "the MLA's arbitration bar does not apply regardless of Plaintiff Rodriguez's active duty status" is contrary to law. DE 37 at 12. The plain language of that statute provides covered members, like Rodriguez, the choice to decline the opportunity to bring his claims to arbitration and, in this case, Rodriguez clearly declines. Rodriguez's claims will proceed to discovery in accordance with a forthcoming Scheduling Order.[8]

Accordingly, the court AFFIRMS Judge Jones' order concluding that Plaintiffs Nowlin's and Haley's claims are subject to arbitration pursuant to their agreements with Defendant, REVERSES the order concluding that 10 U.S.C. § 987(f)(4) does not apply to render unenforceable the agreement between Plaintiff Rodriguez and Defendant to arbitrate Rodriguez's claims, ADOPTS the recommendation in part, and dismisses Plaintiffs Nowlin's and Haley's claims against Defendant.[9]

The remaining claims in this case are referred to the magistrate judge for a scheduling order

---

[8] The court recognizes that, in addition to their own claims, the named Plaintiffs seek to represent those "similarly situated" in this putative class action. The court makes, and has made, no findings as to the "class" aspect of this action. Issues related to certification and representativeness are not before the court at this time.

[9] The court recognizes the procedural posture in which Defendant's unchallenged request for dismissal, rather than a stay, places the action. *See Smith v. Spizzirri*, 601 U.S. 472, 478 (2024).

and/or other appropriate action at this stage of the litigation.

SO ORDERED this 4th day of August, 2026.

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE